UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

─────────────────────────────────────

HERMAN ROBINSON,

                                        Petitioner,            Civil Action No.
                                                               9:19-CV-0777
                      v.                                       (GTS)

EARL BELL,

                                        Respondent.

─────────────────────────────────────

APPEARANCES:                                           OF COUNSEL:

HERMAN ROBINSON
15-A-2163
Petitioner, pro se
Clinton Correctional Facility
P.O. Box 2000
Dannemora, NY 12929

HON. LETITIA JAMES                                     MICHELLE E. MAEROV, ESQ.
New York State Attorney General                        Assistant Attorney General
Attorney for Respondent
The Capitol
Albany, NY 12224

GLENN T. SUDDABY
Chief United States District Judge

## DECISION AND ORDER

## I.     INTRODUCTION

       Petitioner Herman Robinson ("petitioner") filed his petition for a writ of habeas corpus

pursuant to 28 U.S.C. § 2254 on July 1, 2019.  Dkt. No. 1, Petition ("Pet.").  On July 19, 2019,

the Court directed respondent to answer the petition.  Dkt. No. 6.  Petitioner thereafter filed a

memorandum of law in support of his petition.  Dkt. No. 10, Petitioner's Memorandum of Law

("Pet's Memo.").  On February 14, 2020, the respondent filed his opposition, along with the

relevant state court records.  *See* Dkt. No. 18, Answer; Dkt. No. 19, Respondent's Memorandum of Law ("Resp.'s Memo."); Dkt. No. 20, State Court Records ("SCR"); Dkt. No. 21, State Court Transcript ("TR").[1]  On September 18, 2020, petitioner filed a reply.  Dkt. No. 32 ("Traverse").

For the reasons that follow, petitioner's habeas petition is denied and dismissed.

## II.    RELEVANT BACKGROUND

### A.    The Charges

On or about March 5, 2014, petitioner was indicted in Schenectady County on charges of second-degree murder (count one),[2] predatory sexual assault against a child (count two),[3] first-degree course of sexual conduct against a child (count three),[4] first-degree rape (two counts) (counts four and five),[5] first-degree criminal sexual act (count six),[6] second-degree rape (count seven),[7] and endangering the welfare of a child (count eight).[8]  SCR 348-51. Generally, these charges stemmed from allegations that petitioner repeatedly sexually assaulted and raped his stepdaughter, D.S., beginning when she was in sixth grade in 2006,

---

[1]  The state court transcript includes the trial transcript ("TR"), the sentencing transcript ("Sentencing TR"), and the Re-sentencing transcript ("Resentencing TR").

[2]  N.Y. Penal L. § 125.25-1

[3]  N.Y. Penal L. § 130.96

[4]  N.Y. Penal L. § 130.75-1(b)

[5]  N.Y. Penal L. § 130.35-1

[6]  N.Y. Penal L. § 130.50-1

[7]  N.Y. Penal L. § 130.31-1

[8]  N.Y. Penal L. § 260.10-1

impregnated D.S. during the summer of 2009 after her eighth-grade year, and then killed the baby on March 11, 2010, immediately after D.S. gave birth to it.

### B.   The Bench Trial

A 10-day bench trial was conducted beginning on April 6, 2015, before Schenectady County Supreme Court Justice Michael V. Coccoma.  *See* TR at 1.  At the outset of the trial, the prosecution moved to dismiss count six of the indictment because, during her preparation for trial, D.S. realized she had mistakenly testified before the grand jury that she was the female depicted in a cell phone video recording of a female performing oral sex on petitioner. TR 25-28.  That motion was granted.  *Id.* at 29.  The following testimony and/or proof was adduced during the trial.

On December 10, 2013, after speaking with petitioner on the phone and hearing cause for concern in his voice, Tonya Clark, petitioner's significant other and D.S.'s mother, left work immediately, and her supervisor called 911.  TR at 554-57.  Tonya Clark indicated to the police upon their arrival to her home that she believed petitioner had tried to kill himself.  *Id.* at 558.  Because Tonya Clark did not have her keys, police broke into the home in search of petitioner.  *Id.* at 81, 91-92, 558.  During their initial and subsequent searches, police located pill bottles and a suicide note written by petitioner.  *Id.* at 93-95, 100, 170-71.  The suicide note included confessions of sexually assaulting and raping D.S., impregnating her, and killing the baby.  SCR 428.  The police found petitioner unconscious in a vehicle behind the house and called the paramedics.  TR at 71.  The paramedics supported petitioner's breathing upon arrival and then transported him to a local hospital.  *Id.* at 133-34.  On the same date, Schenectady County Police Detective McCabe contacted D.S. via telephone

3

while D.S. was in college in Utica, New York. *Id.* at 296-97. D.S. later provided a statement to police about the sexual abuse by petitioner and testified at trial to the details of petitioner's conduct. *Id.* 797-806, 823-987.

During the trial, the prosecution called a forensic expert, Urfan Mukhtar, to testify about the DNA testing that he conducted on a bloodstain found on a box spring that police seized at the house in which D.S. gave birth. TR 1358. The DNA test results showed the presence of DNA from an unidentified female donor, mixed with DNA from at least one other donor for whom a full DNA profile could not be developed. *Id.* at 1365-67. When Mukhtar compared the unidentified female donor's profile with D.S. and petitioner, the comparison revealed that D.S. and petitioner are 48.5 million times more likely to be the parents of the unknown female donor than two randomly selected individuals. *Id.* at 1369-72.

Also during the trial, petitioner's trial counsel made a motion to suppress the suicide note. TR 1262-68. After receiving briefs from the parties, Judge Coccoma denied petitioner's motion. SCR 355-70, 395-400, 401-03.

After the bench trial, Judge Coccoma found petitioner guilty of second-degree murder (count one), predatory sexual assault against a child (count two), first-degree course of sexual conduct against a child (count three), first-degree rape (two counts) (counts four and five), second-degree rape (count seven), and endangering the welfare of a child (count eight). SCR at 404-09.

## C.    Post-Trial Proceedings

Petitioner was initially sentenced on May 27, 2015.  Sentencing TR at 1-43.

Petitioner's subsequent motion to set aside his sentence pursuant to New York Criminal

Procedural Law § 440.20 was granted, SCR 252-53, and petitioner was resentenced on

October 5, 2016, Resentencing TR 1-11.  During the resentencing, the prosecution moved to

vacate the judgment and sentence with respect to count three of the indictment (course of

conduct against a child in the first degree) and dismiss that count because it is a lesser

included offense to count two (predatory sexual assault of a child).  *Id.* at 3.  The trial court

granted that motion.  *Id.* at 4.

Petitioner, represented by counsel, thereafter filed a direct appeal to the New York

State Appellate Division, Fourth Department, asserting the following claims: (1) the evidence

at trial was legally insufficient to support his convictions, and the verdict was against the

weight of the evidence; (2) the trial court erred by not suppressing the suicide note in violation

of the Fourth Amendment; (3) the trial court erred in not suppressing petitioner's statements

made to police in violation of the Sixth Amendment; (4) the grand jury proceedings were

defective; and (5) petitioner's sentence was harsh and excessive.  SCR 281-339.

The Appellate Division issued its decision affirming the judgment on December 21,

2017.  *People v. Robinson*, 156 A.D.3d 1123 (3d Dep't 2017).  The Appellate Division

rejected petitioner's claims on the merits.  *Robinson*, 156 A.D.3d at 1124-1132.  The New

York Court of Appeals denied petitioner's application for leave to appeal on February 23,

2018.  *People v. Robinson*, 30 N.Y.3d 1119 (N.Y. 2018).

Petitioner filed a pro se petition for a writ of coram nobis in the Appellate Division on November 1, 2018.  SCR 1413-59.  The petition argued that petitioner's appellate counsel was ineffective for the following reasons: (1) he failed to argue that trial counsel was ineffective because he (a) failed to consult a medical and DNA expert, and (b) failed to object to testimony by Detective Ericson suggesting that suicide is a crime in New York; and (2) he failed to argue that the prosecutor committed misconduct by (a) failing to disclose to the defense the cell phone video recording, (b) failing to present exculpatory evidence to the grand jury, (c) eliciting false testimony from D.S. in the grand jury, and (d) failing to correct Detective Ericson's testimony.  *Id.* at 1414-52.  The Appellate Division denied the petition on December 20, 2018.  SCR 1522.  The New York Court of Appeals denied petitioner's application for leave to appeal on February 28, 2019.  SCR 1523.

## III.    PARTIES' PLEADINGS

Petitioner cites the following four general grounds for habeas relief: (1) prosecutorial misconduct, (2) violation of his Fourth Amendment rights, (3) insufficient evidence at trial, and (4) ineffective assistance of trial and appellate counsel.  *See generally* Pet.'s Memo.  More specifically, petitioner contends that the prosecution (a) presented false evidence and elicited false testimony to the grand jury ("Point One"[9]), (b) failed to provide the defense with impeachment evidence ("Point Two"), and (c) failed to correct witnesses' testimony ("Point Four").  *Id.* at 9-13, 22-25.  Petitioner further contends that the suicide note was obtained by police in violation of his Fourth Amendment rights ("Point Three"), and that the evidence at

---

[9]  The Court's shorthand descriptions of petitioner's specific claims largely correspond with how petitioner describes them in his memorandum of law.  Because respondent also refers to petitioner's descriptions in its opposition, the Court has followed the parties' lead in this respect for the sake of consistency.

trial (specifically the DNA evidence) was insufficient to support a conviction of second-degree murder ("Point Five").  *Id.* at 14-22, 25-27.  Lastly, petitioner sets forth ineffective assistance of counsel claims against his trial counsel ("Ground Two") and against his appellate counsel ("Ground Three").  *Id.* at 28-33.  As against his trial counsel, petitioner contends that counsel did not obtain exculpatory evidence, failed to obtain medical experts, failed to object to inaccurate statements made by witnesses, and failed to reopen the suppression motion.  *Id.* at 28-31.  Petitioner argues that his appellate counsel failed to use adequate trial evidence to support his claims on appeal and that counsel failed to raise prosecutorial misconduct as a basis for reversal.  *Id.* 32-33.

Respondent opposes the petition, arguing as follows: (1) Point One is unexhausted, procedurally defaulted, not cognizable, and, in any event, meritless, Resp.'s Memo. at 32-33, 34-36; (2) Point Two is unexhausted and meritless, *id.* at 33-34, 37-39; (3) Point Three is barred by *Stone v. Powell*, 428 U.S. 465 (1976), *id.* at 29-31; (4) Point Four is unexhausted, procedurally defaulted, and meritless, *id.* at 32-33, 39-41; (5) Point Five is unexhausted, procedurally defaulted, and meritless, *id.* at 23-29; (6) Ground Two is unexhausted and meritless, *id.* at 41-45; and (7) Ground Three is not contrary to, or an unreasonable application of, clearly established Supreme Court law, *id.* at 45-49.

In further support of his petition, petitioner filed a reply.  *See generally* Traverse. Petitioner tacitly admits that Point Five is unexhausted but argues that "there would be a terrible miscarriage of Justice if [the] Court Chooses not to Review this claim."  Traverse at 3. Petitioner contends that Point Three is not barred because, regardless of whether he had a "full" opportunity to present his Fourth Amendment claim in State Court, "it was most certainly

not fair." *Id.* at 4-5.  As for Points One, Two, and Four, petitioner argues that the state court record supports his claims but does not address respondent's contention that those claims are unexhausted.  *Id.* at 6.  Lastly, petitioner argues that his ineffective assistance of counsel claims (Grounds Two and Three) have merit because it was counsel's "Job to find the Missteps [at trial] and Correct them but that was not done to the fullest here."  *Id.* at 7.

IV.    **DISCUSSION**

    A.    **Standard of Review**

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant habeas corpus relief with respect to a claim adjudicated on the merits in state court only if, based upon the record before the state court, the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. §§ 2254(d); *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011); *Premo v. Moore*, 562 U.S. 115, 120-21 (2011); *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).  This standard is "highly deferential" and "demands that state-court decisions be given the benefit of the doubt." *Felkner v. Jackson*, 562 U.S. 594, 598 (2011) (internal quotation marks omitted).

The Supreme Court has repeatedly explained that "a federal habeas court may overturn a state court's application of federal law only if it is so erroneous that 'there is no possibility fairminded jurists could disagree that the state court's decision conflicts with th[e Supreme] Court's precedents.'" *Nevada v. Jackson*, 569 U.S. 505, 508-09 (2013) (quoting

8

*Harrington v. Richter*, 562 U.S. 86, 102 (2011)); *see Metrish v. Lancaster*, 569 U.S. 351, 358 (2013) (explaining that success in a habeas case premised on Section 2254(d)(1) requires the petitioner to "show that the challenged state-court ruling rested on 'an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement'") (quoting *Richter*, 562 U.S. at 103)).

Additionally, AEDPA foreclosed "'using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts.'" *Parker v. Matthews*, 567 U.S. 37, 38 (2012) (quoting *Renico v. Lett*, 559 U.S. 766, 779 (2010)). A state court's findings are not unreasonable under Section 2254(d)(2) simply because a federal habeas court reviewing the claim in the first instance would have reached a different conclusion. *Wood v. Allen*, 558 U.S. 290, 301 (2010). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable–a substantially higher threshold." *Schriro*, 550 U.S. at 473.

Federal habeas courts must presume that the state courts' factual findings are correct unless a petitioner rebuts that presumption with "clear and convincing evidence." *Schriro*, 550 U.S. at 473-74 (quoting 28 U.S.C. § 2254(e)(1)). "A state court decision is based on a clearly erroneous factual determination if the state court failed to weigh all of the relevant evidence before making its factual findings." *Lewis v. Conn. Comm'r of Corr.*, 790 F.3d 109, 121 (2d Cir. 2015) (internal quotation marks omitted). Finally, "[w]hen a state court rejects a federal claim without expressly addressing that claim, a federal habeas court must presume that the federal claim was adjudicated on the merits[.]" *Johnson v. Williams*, 568 U.S. 289, 301 (2013).

B.     **Analysis**

      1.  **Prosecutorial Misconduct**

Petitioner's prosecutorial misconduct claim is comprised of three separate contentions. First, petitioner contends that the prosecutor elicited false testimony from D.S. during the grand jury proceedings.  Pet.'s Memo. at 9-12 (Point One).  Second, the prosecution failed to disclose to the defense the cell phone video recording depicting a sexual encounter between petitioner and D.S.'s mother (and not D.S.), which petitioner contends was *Brady* material. *Id.* at 13 (Point Two).  Third, the prosecutor at trial did not correct two witnesses who incorrectly testified that suicide is a crime in New York.  *Id.* at 22-25 (Point Four). Respondent contends that these claims are unexhausted, partially procedurally defaulted, partially non-cognizable, and entirely meritless.  Resp.'s Memo. at 32-41.

Prior to seeking federal habeas relief, a petitioner must exhaust available state remedies or establish either an absence of available state remedies or that such remedies cannot adequately protect his rights.  *Aparicio v. Artuz*, 269 F.3d 78, 89 (2d Cir. 2001) (citing 28 U.S.C. § 2254(b)(1)); *Ellman v. Davis*, 42 F.3d 144, 147 (2d Cir. 1994).  The exhaustion doctrine recognizes "respect for our dual judicial system and concern for harmonious relations between the two adjudicatory institutions."  *Daye v. Att'y Gen. of New York*, 696 F.2d 186, 191 (2d Cir. 1982); *see also Galdamez v. Keane*, 394 F.3d 68, 72 (2d Cir. 2005) ("Comity concerns lie at the core of the exhaustion requirement.").  Though both federal and state courts are charged with securing a state criminal defendant's federal rights, the state courts must initially be given the opportunity to consider and correct any violations of federal law.  *Galdamez*, 394 F.3d at 72 (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 844-45 (1999)).

10

"The chief purposes of the exhaustion doctrine would be frustrated if the federal habeas court were to rule on a claim whose fundamental legal basis was substantially different from that asserted in state court."  *Daye*, 696 F.2d at 192.

      This exhaustion requirement is satisfied if the federal claim has been "'fairly present[ed]'" to the state court.  *Baldwin v. Reese*, 541 U.S. 27, 29 (2004).  A claim has been "fairly presented" if the state court was apprised of "both the factual and the legal premises of the claim [the petitioner] asserts in federal court."  *Daye*, 696 F.2d at 191; *accord, Galdamez*, 394 F.3d at 73.  Thus, "the nature or presentation of the claim must have been likely to alert the court to the claim's federal nature." *Daye*, 696 F.2d at 192.  The state courts will not have a fair opportunity to review the claim if material factual allegations have been omitted. *See id.* at 191.

      After a court determines that a claim is unexhausted, it next considers whether the claim is procedurally defaulted.  In the event an exhausted claim is "barred by state law and. . . its presentation in the state forum would [therefore] be futile[,] . . . [the federal habeas court] theoretically has the power to deem the claim exhausted."  *Aparicio*, 269 F.3d at 90.  As the Second Circuit candidly noted, however,

> [t]his apparent salve. . . proves to be cold comfort to most petitioners because . . . when 'the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred, federal habeas courts also must deem the claims procedurally defaulted.'

*Id.* (quoting *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991)).

### a. Point One

Petitioner's first prosecutorial misconduct claim is based on the contention that the prosecutor elicited false testimony from D.S. before the grand jury.  Pet.'s Memo. at 9-12. The Court need not consider whether this claim is procedurally exhausted because it is not cognizable on federal habeas review.  It is well settled that there is no federal constitutional right to a grand jury in state criminal proceedings and any errors that occur during grand jury proceedings, including prosecutorial misconduct, are therefore not reviewable by federal habeas courts.  *Alexander v. Louisiana*, 405 U.S. 625, 633 (1972); *Fields v. Soloff*, 920 F.2d 1114, 1118 (2d Cir. 1990); *Coward v. Bradt*, No. 11-CV-1362, 2013 WL 6195751, at *15 (N.D.N.Y. Nov. 27, 2013) ("[T]o the extent [the petitioner] alleged that misconduct occurred at grand jury proceedings, such claims are not cognizable on habeas review.").[10]  Accordingly, Point One is denied and dismissed.

### b. Point Two

Petitioner next contends that the prosecution failed to disclose a cell phone video recording, which petitioner characterizes as "impeachment evidence."  Pet.'s Memo. at 13. The video recording is described as displaying a woman in an eye mask performing oral sex

---

[10] In any event, even assuming that Point One is cognizable, the Court agrees with respondent that the claim is unexhausted and procedurally defaulted.  In his appeal to the Appellate Division, petitioner did not argue that the prosecutor elicited false testimony from D.S. before the grand jury.  *See generally* SCR at 279-339. Because petitioner failed to raise it on appeal, he cannot now raise the claim in state court.  "The time afforded by New York law for filing a leave application has expired."  *Cano v. Walsh*, 170 F. App'x 749, 750 (2d Cir. 2006) (citing New York Criminal Procedure Law §§ 460.10(5)(a), 460.30(1) (fixing the time at 30 days from service of the order plus a one-year grace period)).  Further, petitioner already utilized the direct appeal to which he is entitled and, because Point One was reviewable from the record, he cannot raise it in a motion to vacate the judgment.  *See Grey v. Hoke*, 933 F.2d 117, 120-21 (2d Cir. 1991) (explaining that, where "the one request for leave to appeal" was taken and additional collateral review would be barred because the issues could have been raised on direct appeal, "petitioner no longer has 'remedies available' in the . . . state courts . . . and . . . he had met the statutory exhaustion requirements").

on petitioner.  *See* Dkt. No. 10-1 (Exhibit A to Pet.'s Memo.) at 2; TR at 25-26.  After D.S. viewed the recording "briefly," she mistakenly testified that she was the female in the recording.  Dkt. No. 10-1 (Exhibit A to Pet.'s Memo.) at 3; TR at 26.  This testimony provoked the prosecution to seek an indictment for count six, first-degree criminal sexual act.  During preparation for the trial, however, D.S. reviewed the video again, "this time more closely and longer," and realized she was not the female in the recording.  TR at 26.  Before the trial began, the prosecution withdrew count six from the indictment.  *Id.*  Petitioner now claims that the video recording itself should have been turned over to the defense, and that the failure to do so violated *Brady v. Maryland*, 373 U.S. 83 (1963).  Pet.'s Memo. at 13.  Although petitioner did not raise this claim on direct appeal, as respondent notes, because the claim could still be raised in state court in a motion pursuant to New York Criminal Procedural Law § 440.10, it is not procedurally defaulted.  For that reason, the Court will consider the merits of the claim.

"[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."  *Brady*, 373 U.S. at 87 (1963). "There are three components of a true *Brady* violation: [t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued."  *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999).  *Brady* is not violated "unless the nondisclosure was so serious that there is a reasonable probability that

the suppressed evidence would have produced a different verdict." *Strickler*, 527 U.S. at 281.

Fatal to petitioner's Point Two in this case, however, is that "*Brady* cannot be violated if the defendant[] had actual knowledge of the relevant information or if the documents are part of public records and defense counsel should know of them and fails to obtain them because of lack of diligence in his own investigation." *United States v. Zagari*, 111 F.3d 307, 320 (2d Cir.1997) (internal quotation marks omitted).  Indeed, the trial court judge, the prosecutor, and petitioner's counsel engaged in a discussion on the record about the video recording and D.S.'s statements.  TR at 25-29.  Although petitioner's counsel requested disclosure of any contemporaneous notes or transcriptions rendered during D.S.'s recantation, counsel never requested a copy of the video recording itself.  *Id.*  For this reason alone, Point Two is subject to denial and dismissal.

In any event, Point Two must be denied and dismissed also because petitioner has not demonstrated "a reasonable likelihood that disclosure of the [video] would have affected the outcome of the case, or would have put the case in such a different light as to undermine confidence in the outcome." *United States v. Rivas*, 377 F.3d 195, 199 (2d Cir. 2004) (citations omitted).  The disclosure of D.S.'s error prior to trial, in addition to the withdrawal of count six from the indictment, provided petitioner's counsel sufficient grounds to undermine D.S.'s credibility on cross-examination.  TR at 1010-1012.  Petitioner has not presented any evidence or argument that suggests access to the video recording itself would have persuaded the trial court that D.S. was not credible.  Accordingly, Point Two is denied and dismissed for this reason, as well.

14

### c.  Point Four

Petitioner's last prosecutorial misconduct claim is based on his contention that, during trial, the prosecutor failed to correct two witnesses' testimonies that attempted suicide is a crime under New York State law.  Pet.'s Memo. at 22-25.  Petitioner did not raise this claim on direct appeal, and he cannot now bring the claim in state court.  *Cano*, 170 F. App'x at 750; *Grey*, 933 F.2d at 120-21.  Accordingly, Point Four is unexhausted and procedurally defaulted.

Once a claim has been deemed procedurally defaulted, it is subject to dismissal unless the petitioner can demonstrate "cause for the default and prejudice, or demonstrate that failure to consider the claim will result in a miscarriage of justice (i.e., the petitioner is actually innocent)."  *Aparacio*, 269 F.3d at 90 (citing *Coleman*, 501 U.S. at 748-50); *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 809 (2d Cir. 2000).  To establish cause, petitioner must show that some objective external factor impeded his ability to comply with the relevant procedural rule.  *Maples v. Thomas*, 565 U.S. 266, 280 (2012); *Coleman*, 501 U.S. at 753.  If a petitioner fails to establish cause, a court need not decide whether he suffered actual prejudice, because federal habeas relief is generally unavailable as to procedurally defaulted claims unless both cause and prejudice are demonstrated.  *See Murray v. Carrier*, 477 U.S. 478, 496 (1986) (referring to the "cause-and-prejudice standard").

Petitioner does not assert any basis for finding cause for his failure to present this claim in state court, and the Court discerns none. *See Bossett v. Walker*, 41 F.3d 825, 829 (2d Cir. 1994) (concluding that petitioner did not satisfy the cause and prejudice showing where he did not give any reason for failing to properly exhaust his federal claim in state

court).  Because petitioner failed to establish cause, the Court need not decide whether he will suffer actual prejudice before foreclosing habeas review.  *Carrier*, 477 U.S. at 496; *Stepney v. Lopes*, 760 F.2d 40, 45 (2d Cir. 1985).  Finally, petitioner has made no showing that he is actually innocent.

Accordingly, petitioner's Point Four is denied and dismissed as procedurally defaulted.

### 2.  Fourth Amendment (Point Three)

Petitioner's next claim is that his suicide note was unlawfully seized by police in violation of his Fourth Amendment rights.  Pet.'s Memo. at 14-22.  This claim, however, is barred by the Supreme Court's decision in *Stone v. Powell*, 428 U.S. 465 (1978).  Under *Stone*, "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim," federal habeas corpus review will not lie for a claim that the trial court erred in denying a motion to suppress evidence recovered through an illegal search or seizure.  428 U.S. at 482; *see also Capellan v. Riley*, 975 F.2d 67, 71 (2d Cir. 1992) ("*Powell* requir[es] only that the state courts provide an opportunity for full and fair litigation of a fourth amendment claim . . . . [A] petitioner cannot gain federal review of a fourth amendment claim simply because the federal court may have reached a different result." (emphasis omitted)).  The Second Circuit has explained that "review of fourth amendment claims in habeas petitions [are] undertaken in only one of two instances: (a) if the state has provided no corrective procedures at all to redress the alleged fourth amendment violations; or (b) if the state has provided a corrective mechanism, but the defendant was precluded from using that mechanism because of an unconscionable breakdown in the underlying process."  *Capellan*, 975 F.2d at 70.

16

With due regard to petitioner's pro se status, he has not established either that he was provided no corrective procedures or that there was an unconscionable breakdown in the corrective procedures that he was afforded.  With respect to whether petitioner was afforded corrective procedures, he sought suppression of the suicide note in Schenectady County Supreme Court and was provided a full and fair opportunity to address his challenge to the seizure of the note.  TR 1262-68.  "[F]ederal courts have approved New York's procedure for litigating Fourth Amendment claims . . . as being facially adequate."  *Capellan*, 975 F.2d at 70 n.1.  As for whether there was an unconscionable breakdown in the process, petitioner makes no argument to that effect, and the record does not support such a conclusion.  The trial court permitted petitioner and the State to provide written briefs, and, in addition to his counseled brief, petitioner filed his own pro se affidavit in support of the motion to suppress. SCR at 353-54 (petitioner's pro se affidavit), 355-70 (petitioner's counseled brief), SR 395-400 (the State's brief).  The trial court issued a full written order denying the motion.  *Id.* at 401-03.  Petitioner also challenged the seizure of the note on appeal.  *Id.* at 320-30.  The Appellate Division rejected the claim.  *Robinson*, 156 A.D.3d at 1128-29.

In light of the foregoing, the Court finds that petitioner was afforded an opportunity to challenge the alleged Fourth Amendment violations in state court and that there is no basis to conclude that there was "an unconscionable breakdown in the underlying process." *Capellan*, 975 F.2d at 71.  To the extent that petitioner's claim is simply that the trial court's decision was incorrect, "mere disagreement with the outcome of a state court ruling is not the equivalent of an unconscionable breakdown in the state's corrective process."  *Id.* at 72.

Accordingly, petitioner's Point Three is denied and dismissed.

17

### 3. Legal Sufficiency (Point Five)

Petitioner contends that the trial failed to adduce sufficient evidence to support his conviction.  Pet.'s Memo. at 25.  As described above in Part II.C of this Decision and Order, petitioner was convicted of five crimes, including two counts of first-degree rape.  SCR 215-20.  Although petitioner does not specify which of the five crimes he believes the trial evidence fails to support, he specifically focuses on the DNA evidence presented at trial and argues that it did not prove beyond a reasonable doubt that he impregnated D.S or how (or that) the murder occurred.  Pet.'s Memo. at 25-27.  Respondent opposes this claim, arguing that it is unexhausted, procedurally defaulted, and without merit.  Resp.'s Memo. at 23-29.

Turning first to respondent's contention that petitioner did not exhaust this claim, petitioner appealed his convictions in state court, arguing, in part, that the verdicts on all counts were not supported by legally sufficient evidence.  SCR at 309-19.  Petitioner also contended that the verdicts were against the weight of the evidence.  *Id.*  In support of these claims on appeal, petitioner specifically challenged the suicide note, the text messages between him and the victim, petitioner's attempted suicide, and the victim's account of her childbirth experience and the murder of the baby to support his insufficiency claim as to all counts.  *Id.* at 310-13.  As to the verdict on count two (predatory sexual assault of a child), petitioner challenged the evidence that proved the victim was eleven or twelve years old at the relevant times.  *Id.* at 314-15.  Lastly, petitioner contended that the evidence supporting the "forcible compulsion" element of rape in the first degree was insufficient to support the two counts of which petitioner was found guilty.  *Id.* at 316-19.

18

Petitioner did not argue, however, as he does now in his federal habeas petition, that the DNA evidence presented at trial was insufficient to support the convictions.  To the contrary, petitioner conceded "there was some evidence that, if credited, tended to prove that a birth [of a baby] did occur at some time, such as the testimony of Dr. Canter and the DNA analyst."  SCR at 313.  Although petitioner challenged that evidence by stating that it "was substantially outweighed by evidence casting doubt on th[e] proposition [that a birth occurred on or about March 11, 2013]," *id.*, it is clear that argument was directed to his weight-of-the-evidence, and not the sufficiency-of-the-evidence, claim.  As noted above, "[i]n order to have fairly presented his federal claim to the state courts the petitioner must have informed the state court of *both* the *factual* and legal premises of the claim he asserts in federal court." *Daye*, 696 F.3d at 191 (emphasis added).  Because petitioner did not support his sufficiency claim in state court by challenging the DNA evidence presented at trial, the state court cannot be said to have had a full opportunity to address and decide the issue.  Accordingly, petitioner's sufficiency claim is unexhausted.

Petitioner's claim is also procedurally defaulted.  Petitioner cannot now return to state court to present his sufficiency-of-the-evidence claim based on the DNA evidence because he has already taken his one appeal and applied for leave to appeal to the New York State Court of Appeals.  *See Grey*, 933 F.2d at 120-21 (explaining that, where "the one request for leave to appeal" was taken and additional collateral review would be barred because the issues could have been raised on direct appeal, "petitioner no longer has 'remedies available' in the . . . state courts").

As discussed above in Part IV.B.1.c of this Decision and Order, once a claim has been deemed procedurally defaulted, it is subject to dismissal unless the petitioner can demonstrate "cause for the default and prejudice, or demonstrate that failure to consider the claim will result in a miscarriage of justice (i.e., the petitioner is actually innocent)." *Aparacio*, 269 F.3d at 90.  Petitioner has failed to establish cause for his default and prejudice attributable thereto, nor has petitioner argued that failure to consider his claims will result in a miscarriage of justice.  Petitioner has also failed to establish any modicum of evidence that he is actually innocent.  Accordingly, petitioner's Point Five is denied and dismissed as procedurally defaulted.[11]

### 4. Ineffective Assistance of Counsel (Grounds Two and Three)

Under the well-established standard governing ineffective assistance of counsel claims,

> the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

---

[11] Petitioner's Point Five is also subject to denial because it is meritless.  A petitioner "bears a very heavy burden" when challenging the evidentiary sufficiency of his state criminal conviction. *Einaugler v. Supreme Court of New York*, 109 F.3d 836, 840 (2d Cir. 1997).  A criminal conviction will not be reversed if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  "What is more, a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court.  The federal court may do so only if the state court decision was 'objectively unreasonable.'" *Cavazos v. Smith*, 565 U.S. 1, 2 (2011).  Having carefully reviewed the state court record, including the victim's trial testimony, and the Appellate Division's decision, the Court finds that it was not objectively unreasonable for the Appellate Division to deny of petitioner's sufficiency-of-the-evidence claims.

*Strickland v. Wash.*, 466 U.S. 668, 687 (1984); *accord, Premo v. Moore*, 562 U.S. 115, 121-22 (2011); *see also Murden v. Artuz*, 497 F.3d 178, 198 (2d Cir. 2007).

To be constitutionally deficient, the attorney's conduct must fall "outside the wide range of professionally competent assistance."  *Strickland*, 466 U.S. at 690; *accord, Rivas v. Fischer*, 780 F.3d 529, 547 (2d Cir. 2015).  An attorney's performance is judged against this standard in light of the totality of the circumstances and from the perspective of counsel at the time of trial, with every effort made to "eliminate the distorting effects of hindsight[.]" *Strickland*, 466 U.S. at 689; *see also Rivas*, 780 F.3d at 547 (noting the court's "scrutiny of counsel's performance must be 'highly deferential'" (quoting *Strickland*, 466 U.S. at 689)).

Addressing the second prong of the *Strickland* test, courts have generally held that prejudice is established by showing that there is a "reasonable probability" that, but for the attorney's deficient conduct, "the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694; *see also Murden*, 497 F.3d at 198 ("Under *Strickland*, a defendant must show that . . . there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (quotation marks omitted)).

### a.  Ground Two

Petitioner cites four grounds for ineffective assistance of trial counsel claim.

First, petitioner contends that trial counsel did not obtain exculpatory evidence by way of the cell phone video recording depicting him receiving oral sex from a female.  Pet.'s Memo. at 28.  As discussed above in Part IV.B.1.b of this Decision and Order, the video recording itself was unnecessary to impeach the credibility of D.S., who had mistakenly

testified before the grand jury that she was the female depicted in the recording.  The error became known to petitioner prior to the start of trial, the prosecution dismissed count six of the indictment as a result of D.S.'s recantation, and petitioner's counsel cross-examined D.S. during trial about her erroneous testimony.  In light of all of the circumstances, it was not unreasonable for petitioner's trial counsel to not seek disclosure of the video recording.

Second, petitioner claims that trial counsel was ineffective because he failed to obtain a medical expert at trial.  Pet.'s Memo. at 28-29.  "[T]he tactical decision of whether to call specific witnesses – even ones that might offer exculpatory evidence – is ordinarily not viewed as a lapse in professional judgment."  *United States v. Schmidt*, 105 F.3d 82, 90 (2d Cir. 1997); *see also Gersten v. Senkowski*, 426 F.3d 588, 609 (2d Cir. 2005) ("There is no *per se* rule that requires trial attorneys to seek out an expert." (cleaned up)).  Trial attorneys are "entitled to formulate a strategy that was reasonable at the time and to balance limited resources in accord with effective trial tactics and strategies." *Harrington v. Richter*, 562 U.S. 86, 104 (2011).  Petitioner in this case has not suggested that an expert was available to rebut the prosecution's DNA expert's testimony.  Petitioner also fails to account for trial counsel's cross-examination of the DNA expert, which included confronting the expert about the additional allele.  The Court finds that trial counsel's decision not to retain an expert in this case does not reflect constitutionally deficient representation.

Third, petitioner contends that trial counsel was ineffective when he did not object to the two witnesses' incorrect testimony that attempted suicide is a crime in New York State. Pet.'s Memo. at 30-31.  Setting aside the fact that the witnesses' testimony was elicited by petitioner's counsel and therefore petitioner's counsel could not object to it, petitioner has

failed to demonstrate any prejudice in trial counsel's failure to correct the testimony.  In light of all of the evidence adduced at trial, the witnesses' inaccurate statements of the law cannot be said to have swayed the outcome of the case.

Lastly, trial counsel was allegedly ineffective by failing to reopen the suppression motion following Detective Ericson's testimony at trial.  Pet.'s Memo. of Law at 31.  As respondent notes, however, trial counsel moved to suppress the suicide note after Detective Ericson testified.  Detective Ericson testified on April 6, 2015, TR 206, and petitioner's counsel moved to suppress on April 17, 2015, *id.* at 1262.  Accordingly, petitioner's claim that his counsel was ineffective for failing to "reopen" the suppression motion after Detective Ericson testified is without merit.

For all of the foregoing reasons, petitioner's Ground Two ineffective assistance of trial counsel claim is denied and dismissed.

### b.  Ground Three

Ground Three consists of petitioner's claim that his appellate counsel (1) was ineffective for failing to use adequate trial evidence to support his claims on appeal, and (2) failed to raise prosecutorial misconduct claims as a basis for reversal.  Pet.'s Memo. at 32-33.  These claims were raised by petitioner in his petition for a writ of error coram nobis, which was denied by the Appellate Division in a summary order, *People v. Robinson*, 242 A.D.2d 985 (4th Dep't 1997), operating as a denial on the merits.  *See Harrington v. Richter*, 562 U.S. 86, 99 (2011).  Accordingly, the Court reviews petitioner's Ground Three utilizing the AEDPA deferential standard.

Because both *Strickland* and AEDPA each require highly deferential standards of review, the Second Circuit has described AEDPA review in this context as "cabined by double layers of deference." *Boyland v. Artus*, 734 F. App'x 18, 19 (2d Cir. 2018).  Indeed, to succeed on his ineffective assistance of appellate counsel claim in this case, petitioner must show not that the state court applied *Strickland* incorrectly, but that the state court applied the already deferential *Strickland* standard in an objectively unreasonable manner. *Spicola v. Unger*, 703 F. App'x 51, 53 (2d Cir. 2017).

Petitioner has not demonstrated that the state court unreasonably applied *Strickland* in denying his coram nobis petition.  Petitioner's appellate counsel raised five grounds and fully supported those grounds with citations to the record and applicable legal authority.  SCR 279-339.  With respect to petitioner's argument that appellate counsel failed to raise a prosecutorial misconduct claim on appeal, to provide constitutionally effective assistance of counsel under the Sixth Amendment, appellate counsel may focus on issues that present "the most promising issues for review." *Jones v. Barnes*, 463 U.S. 745, 752 (1983); *accord, Clark v. Stinson*, 214 F.3d 315, 322 (2d Cir. 2000).  Because the constitution does not require appellate counsel "to raise every 'colorable' claim suggested by a client," *Jones*, 463 U.S. at 754, it was not an unreasonable application of *Strickland* to deny petitioner's claims that appellate counsel provided deficient advocacy for failing to include a prosecutorial misconduct claim.  Moreover, petitioner has failed to demonstrate that, had counsel asserted a prosecutorial misconduct claim on appeal, it would have been successful.  Accordingly, petitioner's Ground Three claim is denied and dismissed.

24

## V.    CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED** that the petition (Dkt. No. 1) is **DENIED AND DISMISSED**; and it is further

**ORDERED** that a certificate of appealability shall not be issued with respect to any of the claims set forth in the petition because petitioner failed to make a "substantial showing of the denial of a constitutional right" pursuant to 28 U.S.C. § 2253(c)(2);[12] and it is further

**ORDERED** that any further request for a certificate of appealability must be addressed to the Second Circuit Court of Appeals in accordance with Rule 22(b) of the Federal Rules of Appellate Procedure; and it is further

**ORDERED** that the Clerk serve a copy of this Decision and Order on the parties in accordance with the Local Rules of Practice for this Court.

**IT IS SO ORDERED.**

 Dated: July 13, 2022

Hon. Glenn T. Suddaby
Chief U.S. District Judge

---

[12] *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *see Richardson v. Greene*, 497 F.3d 212, 217 (2d Cir. 2007) (holding that, if the court denies a habeas petition on procedural grounds, "the certificate of appealability must show that jurists of reason would find debatable two issues: (1) that the district court was correct in its procedural ruling, and (2) that the applicant has established a valid constitutional violation" (citation omitted)).

25